Filed 10/21/13  P. v. Romo CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERTO ROMO,<br><br>    Defendant and Appellant. | B240422<br><br>(Los Angeles County<br>Super. Ct. No. VA119141) |

APPEAL from a judgment of the Superior Court of Los Angeles County. John A. Torribio, Judge.  Affirmed.


David Arredondo for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Alberto Romo of one count of chop shop operation (Veh. Code, § 10801) (count 1) and one count of receiving stolen property (Pen. Code, § 496, subd. (a))[1] (count 4). The trial court denied probation and sentenced defendant to the low term of two years in count 1, to be served in county jail pursuant to section 1170, subdivision (h)(2). The court stayed the sentence in count 4.

Defendant appeals on the grounds that: (1) the trial court impermissibly interfered with the defendant's right to confront and impeach witnesses; (2) the trial court allowed expert testimony from an officer not qualified to so testify; and (3) the trial court improperly admitted bad acts evidence to prove defendant's conduct on a specified occasion.

## FACTS

### A. Prosecution Evidence

In June 2010, Robert Loera's 2009 Yamaha R6 motorcycle was stolen from the parking structure at his apartment house. His motorcycle had a LoJack device on it. Erick Castro's 2009 Yamaha R6 motorcycle was stolen from his underground parking garage in June 2010 also. In August 2010, Norman Brown reported his 2006 Honda CBR 600 motorcycle stolen from the parking garage at his apartment building, and Jovanny Cruz Rojas reported his 2008 Honda CBR 600 stolen from his apartment complex.

In August 2010, defendant lived in a duplex in Huntington Park where he worked on motorcycles in the rear of the property. Defendant's friend, Armando Comporan, lived in the other unit of the duplex, and Comporan's father's GMC Safari van was parked there. Defendant sometimes drove the van.

On August 31, 2010, Officer Destiny Tafoya of the California Highway Patrol (CHP) went to defendant's residence with Officer Perez to investigate defendant's use of a false name on his driver's license. Defendant invited Officers Tafoya and Perez to the

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

back of his residence. Officer Tafoya saw approximately eight motorcycles, a work table for motorcycles, parts of bikes, and a yard that contained a lot of motorcycle parts. Defendant immediately told Officer Tafoya that he had paperwork on all of the motorcycles and began to shuffle things around in an apparent search. Officer Tafoya told him to stop because defendant was becoming very excited as he searched. At her suggestion, defendant told Officer Perez where to look, but no paperwork was found.

Officer Tafoya told defendant she would run checks on three of the motorcycles and, if everything was clear, she would not need to see the paperwork. One of the motorcycles came back "clear" and not stolen, another was reported to have a vehicle identification number (VIN) that did not conform to standards, and the third had a VIN that was not on file. As a result, she called Officer Justin Vaughan from the CHP auto theft task force to assist in the investigation.

When Officer Vaughan arrived, he noticed the GMC Safari and saw there was a motorcycle in the back of the van. As he entered an open patio area, he saw boxes of Chinese "plastics," which are the body kits that go on motorcycles. There were tools and motorcycle parts scattered everywhere in the garage and the back yard. Officer Vaughan saw eight or nine motorcycles lined up against a wall. There were another eight or nine motorcycles that seemed to be ready for repairs. There was a motorcycle lift with another motorcycle on top of it and a ramp for loading and unloading motorcycles.

Officer Vaughan found a LoJack inside one of the tool boxes. It had been smashed, and all the components were crushed. Further investigation revealed that the LoJack was from Loera's motorcycle. Officer Vaughan noted that the Safari van was a favorite of motorcycle thieves. They modify the doors to open flat, enabling the thieves to back into a parking space more deeply than a regular van, pick up a motorcycle, and throw it inside the van. The doors on the van at defendant's residence had been modified to open all the way. Officer Vaughan discovered a grinder with brushes, which could be used to deface the VIN's and engine numbers associated with the motorcycles. He did not find a die stamp or engraver. Officer Vaughan found a few handlebars that had been

3

snapped from their locked positions, which is the manner by which thieves free the steering mechanisms.

One of the engines found in the garage came from a motorcycle similar to Loera's. A definite identification was not possible because the engine identification numbers had been removed and painted over. The engine to Castro's motorcycle was identified after a forensics process uncovered the defaced numbers. The engine and frame from Rojas's motorcycle was found in a closet. Brown's motorcycle was found with the VIN still intact.

A motorcycle that defendant claimed as his own was found to have an altered VIN. The numbers that were revealed by a forensic process belonged to a stolen motorcycle. It was determined that the motorcycle was registered to Nestor Aispuro. A search of the entire property revealed that defendant did not have any paperwork for any of the motorcycles or engines.

Officer Vaughan was of the opinion that defendant operated a "chop shop." He based his opinion on the van, the lack of paperwork, the state of the recently stolen motorcycles, the smashed LoJack unit, the numerous VIN switches, and the numerous engines with the engine numbers removed. Also, there were a lot of plastics in defendant's inventory and the "fresh" stolen motorcycle plastics were already in his inventory. Out of the 20 motorcycles that defendant had on his property, 11 were stolen, had engine numbers ground off, or had altered VIN's.

### B. Defense Evidence

Nestor Aispuro had known defendant for 10 to 12 years, and they rode motorcycles together. Aispuro purchased a 2005 Honda CBR 1000 from the police impound as salvage. He received a salvage certificate, and the numbers on that certificate matched the VIN on the motorcycle he bought. He never finished registering the motorcycle in his name. He left the motorcycle with defendant in the spring of 2010 because he had to empty out his garage. He gave defendant permission to ride it.

Defendant testified in his own behalf. Defendant denied knowing that any of the motorcycles in his yard were stolen. He had always owned motorcycles, and one day he

4

upgraded his motorcycle with lights and an amplifier. He contacted a company that manufactured plastics, and he began to sell them to satisfied customers. He tried to learn to repair everything on the motorcycles. People brought him their motorcycles to make them look like newer motorcycles.

Defendant stated he never checked the VIN's on the motorcycles because he simply sold plastics and did not think the numbers were relevant. He was not very familiar with engines or mechanics and did not know exactly where the numbers should go, since an engine has numbers everywhere. He bought some parts and motorcycles from Craigslist. With respect to the engines that belonged to Castro and Loera, he bought them from Craigslist for a few hundred dollars. He did not notice that the engine numbers had been removed and that Loera's engine had a LoJack. He did not recognize the LoJack.

Defendant stated that the van was not working. When it worked, Comporan would sometimes drive him to pick up a motorcycle from a customer. Defendant never stole a motorcycle and never used the van to steal any motorcycles or parts. He did not drive the van himself because he did not have a driver's license. He admitted to Officer Tafoya that he had used a different name in the past.

### C. Rebuttal

On January 3, 2010, Officer George Perez initiated a traffic stop of a motorcycle driven by defendant. Instead of a registration, defendant provided the officer with paperwork bearing the name of "Jose Baena."

### DISCUSSION

## I. Limitation on Cross-Examination

### A. *Defendant's Argument*

Defendant contends the trial court should have allowed defense counsel to test the witnesses' credibility with regard to insurance fraud and the existence of liens on the stolen motorcycles.

5

### B. Relevant Authority

Only relevant evidence is admissible. (Evid. Code, § 350.) Unless prohibited by statute, all relevant evidence is admissible. (Evid. Code, § 351.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The trial court's discretionary decision to admit or reject evidence pursuant to Evidence Code section 352 "'will not be disturbed on appeal unless there is a manifest abuse of that discretion resulting in a miscarriage of justice.'" (*People v. Cain* (1995) 10 Cal.4th 1, 33.)

The federal Constitution and the California Constitution both guarantee a criminal defendant the right to confront witnesses against him. (*People v. Cudjo* (1993) 6 Cal.4th 585, 622.) The guarantee does not encompass a cross-examination that is effective in whatever way and to whatever extent the defense might desire, however. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) The confrontation clause permits trial courts to impose reasonable limits on cross-examination to address concerns about harassment, confusion of the issues, interrogation that is only of marginal relevance, and other issues. (*Ibid.*) The right of confrontation is violated when a reasonable jury might have formed a significantly different impression of the witness's credibility had the defendant been permitted to pursue his proposed line of questioning. (*Id.* at p. 680.) "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." (*Id.* at p. 684.)

### C. Proceedings Below

During cross-examination of Castro, defense counsel asked if Castro had insurance on his motorcycle. The trial court stated, "Irrelevant" and struck Castro's

6

affirmative answer. The court denied counsel's request to approach, and counsel asked no more questions. During cross-examination of Brown, defense counsel asked if Brown had any liens on his bike. The court stated, "Irrelevant. Court will sustain its own objection." Defense counsel later told the court outside the presence of the jury that the only reason he asked about the lien was because sometimes bike owners "have a bike conveniently stolen." The trial court replied, "Absent there being anything of that nature, it doesn't seem to be relevant and speculation." Defense counsel added that sometimes the stolen bikes are recovered and the lien holder sells it at auction. The trial court stated that there was no evidence of that having occurred and, at that point, it was speculation. The court sustained the objections.

### D. *No Abuse of Discretion or Violation of Confrontation Rights*

At the outset, we agree with respondent that defendant has forfeited his claim, since he made no effort to present evidence regarding Castro's insurance or the existence of liens on Brown's motorcycle in order to obtain a definitive ruling from the trial court on these lines of cross-examination. (See *People v. Ramirez* (2006) 39 Cal.4th 398, 472.) Furthermore, defense counsel made no objection on the ground that defendant's right of confrontation was being violated. As a result, he has forfeited his right to assert this constitutional claim on appeal. (See *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14.)

In any event, we conclude defendant's claim has no merit. As noted, a defendant's right of confrontation does not signify that the defense may cross-examine a witness without any limitations. (*Delaware v. Van Arsdall*, *supra*, 475 U.S. at p. 679.) The limits the trial court placed on cross-examination regarding insurance and liens were a reasonable attempt to avoid confusion of the issues and the questioning of witnesses on issues of only marginal relevance, if any. (See *People v. Clair* (1992) 2 Cal.4th 629, 656, fn. 3.) Defendant was accused of operating a chop shop, engaging in unlawful VIN activity, and receiving stolen property. The jury was instructed with CALCRIM No. 1752 that, in order to find defendant guilty of operating a chop shop, the People had to prove that defendant knew that he owned or operated a chop shop, and that he intentionally did so. The trial court instructed the jury that, to find defendant guilty of

7

unlawful identification number activity, the People had to prove that the defendant knowingly altered in various ways or removed VIN's.[2] CALCRIM No. 1750 instructed the jury that to find defendant guilty of receiving stolen property, the People had to prove that the defendant, inter alia, bought, sold, received, or concealed property that had been stolen and that when he did so, he knew that the property had been stolen.

The issue of whether the two victims of motorcycle theft had insurance or liens had no relevance to the elements of these offenses with respect to defendant. Whether a victim had had his motorcycle "conveniently stolen" had no bearing on defendant's guilt of the charged crimes. Moreover, whether or not Castro was insured and whether he made a claim on his motorcycle insurance would not have affected his credibility with respect to his limited testimony, and whether Brown's motorcycle was or was not subject to a lien likewise did not affect his credibility. Both men merely testified that they owned a certain motorcycle, that it was stolen, and that the theft was reported. No reasonable jury would have formed a significantly different impression of the witnesses' credibility had the defendant been permitted to pursue his proposed line of questioning. (*Delaware v. Van Arsdall*, *supra*, 475 U.S. at p. 680.) The uncertain, speculative nature of defendant's claim falls short of establishing that the trial court's limitation on cross-examination prevented defendant from eliciting testimony that would have been material to his defense.

In addition, the issue of liens and lien holder sales at auction was brought out by defense counsel in his cross-examination of Officer Vaughan, where counsel elicited that some impound yards fraudulently or unknowingly sell motorcycles with altered VIN's. Defendant also testified that many of the motorcycles brought to him were bought at auctions, and he saw they were "thief recovery" and had broken switches when he removed the plastics. Counsel's argument also brought out the fact that Aispuro bought his motorcycle at auction, and the salvage certificate he received had a matching VIN and

---

[2]     The jury acquitted defendant of this count.

engine number. Counsel argued that defendant had no reason to believe there was anything wrong with it. Counsel then brought out Officer Vaughan's testimony about the auction houses and impound lots selling stolen bikes. Thus, the trial court's ruling did not prevent defendant from presenting his defense, which focused on his lack of knowledge.

Moreover, we believe any error in restricting cross-examination on the issues of insurance and liens was harmless. If the improper restriction of cross-examination violates the confrontation clause, the test is whether the error is harmless beyond a reasonable doubt. (*People v. Dyer* (1988) 45 Cal.3d 26, 47.) As stated in *People v. Rodriguez* (1986) 42 Cal.3d 730, "the prejudicial effect of the error on the trial as a whole depends on a multitude of factors, including the cumulative nature of the lost information, the extent of cross-examination otherwise permitted, the degree of evidence corroborating the witness, and the overall strength of the prosecution case." (*Id*. at p. 751, fn. 2, citing *Delaware v. Van Arsdall*, *supra*, 475 U.S. at p. 684.) In this case, there was no other restriction placed on cross-examination of the victims, and the information about auction sales was otherwise brought to the jury's attention. Most significantly, the prosecution's case was strong. Defendant's property contained numerous motorcycles and parts of motorcycles that showed evidence of being stolen, such as altered VIN's and engine numbers. The van at the scene, to which defendant had access, had been altered in a manner frequently used by motorcycle thieves. Although defendant continually said he had paperwork for the motorcycles, he failed to produce any.

Accordingly, the court did not abuse its discretion in excluding this evidence either on relevance grounds or on the grounds that its probative value was outweighed by its prejudicial effect. Allowing the defense to inquire into insurance claims and liens would have set the stage for a trial within a trial that would have forced the presentation of evidence regarding the legitimacy of any such articles. It would also have led to confusion of the issues for the jury and diverted their attention from the case before them.

9

Having determined that the trial court did not improperly limit the defense it its cross-examination, we also conclude the limitation on cross-examination did not violate defendant's right to confront the witnesses against him.

## II. Admission of Expert Testimony

### A. Defendant's Argument

Defendant contends that the trial court improperly found Officer Vaughan to be a chop shop expert and improperly allowed an expert opinion without legal basis or foundation. Officer Vaughan was qualified as an expert on chop shops after only minimal questioning with almost no inquiry made about his special knowledge, skill, experience, training, or education.

### B. Relevant Authority

Evidence Code section 720, subdivision (a) provides, "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." (See *People v. Bolin* (1998) 18 Cal.4th 297, 321.) "We are required to uphold the trial judge's ruling on the question of an expert's qualifications absent an abuse of discretion. [Citation.] Such abuse of discretion will be found only where '"the evidence shows that a witness *clearly lacks* qualification as an expert . . . .""' (*People v. Chavez* (1985) 39 Cal.3d 823, 828.)

An expert is "sufficiently qualified if 'the witness has sufficient skill or experience in the field so that his [or her] testimony would be likely to assist the [trier of fact] in the search for the truth.'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 766.) ""Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility."" (*People v. Bolin*, *supra*, 18 Cal.4th at p. 322.)

### C. Proceedings Below

Upon Officer Vaughan's taking the stand, the prosecutor elicited that Vaughan had been a police officer for 18 years and currently worked for the CHP investigation services

unit assigned to the auto theft task force. Vaughan stated that during his time as an investigator, he began investigating outlaw motorcycle gangs, which used to be involved in motorcycle chop shop activities. As he progressed through his career, he worked with and assisted other law enforcement agents and agencies dealing with chop shop operations. He began to gain an expertise in sport bikes as opposed to the special construction types of bikes used by motorcycle gangs. The trial court asked Vaughan how many chop shops he had investigated, and Vaughan replied that he had done five or six investigations on his own and had been present during over 50 such investigations. As Vaughan began to explain "how it works," the trial court stated, "I just want the jury to understand. Counsel, you may go ahead and inquire." When the prosecutor asked Vaughan to tell them a bit more about his experience, the trial court stated, "At this point I find him an expert. You may inquire. Please just go to the heart of it."

### D. *No Abuse of Discretion*

We note that the defense made no objection to the trial court's finding that Officer Vaughan qualified as an expert on chop shops. As a result, he has forfeited raising this issue on appeal. (*People v. Bolin, supra,* 18 Cal.4th at p. 321 [defendant who failed to object at trial that witness was not qualified to render an expert opinion waived the issue].)

In any event, defendant's contention has no merit. The trial court properly found Officer Vaughan qualified to testify as an expert on chop shops. In addition to the years of experience he testified to before the court found him qualified, Vaughan demonstrated his expertise on motorcycle theft and chop shops throughout his testimony, validating the trial court's determination that the officer qualified as an expert. Officer Vaughan later explained he acquired his knowledge of using certain vans to steal motorcycles after having "done this for six years." He had learned from the people who steal this way and had trained law enforcement agencies all over the United States on this type of theft specifically. Officer Vaughan demonstrated his expertise by explaining, inter alia, the significance of ignition locking mechanisms that were detached from motorcycles, the nomenclature and numbering system used on various parts of a motorcycle, the method

11

of tampering with numbers, and the process by which law enforcement was able to resurrect numbers that thieves tried to erase.

A person may become an expert on a topic through practical experience alone. (*People v. Brown* (1991) 234 Cal.App.3d 918, 938 ["'to be competent to testify as an expert, [one] must have acquired specialized knowledge of the subject matter . . . either by study or by practical experience'"].) To the extent that Officer Vaughan's training and experience call into question the degree of his knowledge regarding chop shops, these factors go to the weight of Officer Vaughan's opinion and not to its admissibility. (See *People v. Bolin*, *supra*, 18 Cal.4th at p. 322.) Finally, the jury was instructed with CALCRIM No. 332[3] that it was not required to accept the expert's opinions as correct, and that the meaning and importance of the opinion was for the jury to decide. We find no abuse of discretion that would justify disturbing the trial court's determination. (See *People v. Ramos* (1997) 15 Cal.4th 1133, 1175.)

## III.  Evidence of Prior Bad Acts

### A.  Defendant's Argument

Defendant contends that "it is questionable" whether evidence of defendant's acts of obtaining an identification and driver's license under a name not his own and providing paperwork under a name not his own during a traffic stop was relevant. Moreover, the connection to the charged acts is so remote that it is clearly more prejudicial than probative.

---

[3]     The trial court read CALCRIM No. 332 as follows:  "A witness was allowed to testify as an expert and to give opinions.  You must consider the opinions, but you are not required to accept them as true or correct.  The meaning and importance of any opinion are for you to decide.  In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally.  In addition, consider the expert's knowledge, skill, experience, training and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion.  You must decide whether information on which the expert relied was true and accurate.  You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

12

## B. *Relevant Authority*

Prior acts of misconduct not amounting to a felony may be used at trial to impeach a witness, as long as the misconduct evidenced moral turpitude and is not barred by Evidence Code section 352. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-297.) Such acts suggest a willingness to lie. (*Id.* at p. 295.)

Evidence Code section 780 states in pertinent part that "the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following: [¶] . . . [¶] (e) His character for honesty or veracity or their opposites."

## C. *Proceedings Below*

The trial court held a mid-trial Evidence Code section 402 hearing on the prosecutor's intent to introduce evidence of a crime of moral turpitude committed by defendant, should he elect to testify. The prosecutor explained that Officer Tafoya went to defendant's residence for the purpose of investigating defendant's false impersonation and use of a false name. Defendant admitted to her that he used a false name and false driver's license when he was stopped, and he had a motorcycle that was registered to someone else. Defense counsel said he had no problem with the motorcycle, but only with the information that defendant was being investigated for a crime. The trial court overruled the defense objection to the evidence "since it's contemporaneous, and goes directly to honesty and integrity." The court added that, because defendant admitted the act to Officer Tafoya, there was no undue consumption of time problem under Evidence Code section 352.

At the close of direct examination, defense counsel asked defendant, "When the police came to your house, did you admit to Officer Tafoya and Perez that you had actually used a different name in the past?" Defendant said he did. During his cross-examination of defendant, the prosecutor asked him if Officer Tafoya went to his residence because he had given another CHP officer a different name. Defendant replied, "They were accusing me for a ticket that was not mine." The trial court stated, "Counsel,

13

we are not going to go into all the details. He's admitted giving a false name. Let's move on." The trial court refused to allow the prosecutor to inquire about a second lie that defendant told Officer Tafoya.

The prosecutor then asked defendant if he used a different name more than once, and defendant said he had not. Defendant said he had used the name "Antonio Velasquez" on only one occasion. He denied using the name "Jose Baena" with Officer Perez. CHP Officer George Perez testified on rebuttal that he stopped a motorcycle driven by defendant for lack of a license plate. When asked for his name and registration, defendant provided a printout with the name "Jose Baena" on it. The printout was shown to the jury.

### D. *No Abuse of Discretion*

Evidence Code section 1101, subdivision (c) provides that "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." (See also *People v. Kennedy* (2005) 36 Cal.4th 595, 620 ["evidentiary limitations on the use of evidence of specific instances of prior misconduct . . . do not apply to evidence offered to support or attack the credibility of a witness"].) "Although a defendant cannot be compelled to be a witness against himself, if he takes the stand and makes a general denial of the crime with which he is charged, the permissible scope of cross-examination is 'very wide.' [Citation.]" (*People v. Cooper* (1991) 53 Cal.3d 771, 822.)

A testifying defendant may be impeached with evidence that includes prior uncharged unlawful acts that would be inadmissible for other purposes. (Evid. Code, §§ 780, 1101, subd. (c); *People v. Humiston* (1993) 20 Cal.App.4th 460, 479.) The record shows that defendant testified at length about his lack of knowledge that any of the motorcycles or parts that he had in his possession were stolen. According to defendant, he began upgrading motorcycles during a recession when it was difficult to find a job. People who bought motorcycles in the impound yards or at auctions heard he was giving good prices on the plastics and brought him their motorcycles. He simply sold plastics and did not check VIN's on motorcycles brought to him. He was not familiar with the

places that numbers should be on engines. He asserted that he bought the engine with the LoJack on Craigslist and did not even know what the LoJack box was. Thus, defendant portrayed himself as an honest person whom the jury should believe on all disputed points. This testimony put his credibility directly in issue. Therefore, any evidence tending to show his dishonesty was relevant and proper for impeachment.

In light of the above, defendant's claim of abuse of discretion under Evidence Code section 352 fails. A reviewing court will find such abuse of discretion only if the trial court's decision was so arbitrary, capricious, or patently absurd that it resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Defendant cannot make that showing. A defendant who elects to testify has no right to cloak himself in a false aura of credibility. Providing false information to a police officer involves dishonesty, and such conduct generally would be admissible and relevant to a witness's credibility.

Moreover, in light of the overwhelming evidence of defendant's guilt, as discussed *ante*, there was no reasonable probability of a more favorable outcome for defendant had that evidence been excluded. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 999 [the erroneous admission of evidence that does not impair a defendant's constitutional right to due process of law is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836].)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

CHAVEZ, J.       FERNS, J.*

_____

*   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15